**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRIAN L. GRAHAM, | : | |
|     **Plaintiff,** | : | |
| | : | |
|     v. | : | **CIVIL ACTION NO. 26-CV-2894** |
| | : | |
| THE HONORABLE DANIEL | : | |
| CLIFFORD, *et al.*, | : | |
|     **Defendants.** | : | |

**<u>MEMORANDUM</u>**

**SCOTT, J.**                                                 **JULY  1, 2026**

    *Pro se*  Plaintiff Brian L. Graham brings this civil action pursuant to 42 U.S.C. § 1983, naming as Defendants Montgomery County, its Sheriff and Sheriff's Department, the Montgomery County Correctional Facility ("MCCF") and its Warden, Court of Common Pleas Judge Daniel Clifford, real estate agent John O'Hara, and "RE/MAX Central, Inc."  Graham seeks leave to proceed *in forma pauperis*.  Graham also moves for appointment of counsel.  For the following reasons, the Court will grant Graham's Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 1), dismiss the Complaint (ECF No. 2) on statutory screening pursuant to 28 U.S.C. § 1915, and deny the Motion to Appoint Counsel (ECF No. 3).

**I.  FACTUAL ALLEGATIONS**[1]

    Graham states that he "had two child support cases in Montgomery County," and that he "was unable to make payments" because of "a documented medical disability" and his "unemployment since March 2024."  (Compl. at 4.)  He was previously unable to make support

---

[1]  The facts set forth in this Memorandum are taken from Graham's Complaint (ECF No. 2).  The Court adopts the pagination assigned to the Complaint by the CM/ECF docketing system. Grammar, spelling, and punctuation errors are cleaned up where necessary.  Additionally, the

payments in 2022, and he alleges that Judge Clifford did not provide him counsel at four appearances that year, on the last of which "Judge Clifford sentenced [Graham] to six months in jail without counsel and without any waiver of the right to counsel." (*Id.* at 4-5.)  In June 2024, Graham again "fell behind on support payments and attended a Zoom hearing with Montgomery County Domestic Relations," where he was ordered to make a payment by July 19, 2024, or appear before Judge Clifford on July 23. (*Id.* at 5.)  It appears that Graham did not make a payment, because he states that on July 23, a "Domestic Relations Compliance Conciliator" gave him a "Right to Counsel" form, which he signed "requesting representation." (*Id.*)  At the hearing on the same day, a "Domestic Relations Compliance Supervisor" told Judge Clifford that Graham had requested counsel, but Judge Clifford "admonished Domestic Relations [and] proceeded with the hearing without counsel, found [Graham] in contempt, and ordered him to pay by August 2, 2024, work with 'Neon,'[2] or return on August 6, 2024, for jail." (*Id.*)

On August 6, Graham appeared before Judge Clifford without counsel. (*Id.*)  "[I]n order to avoid jail, [Graham] told Judge Clifford [that he] was considering selling his home." (*Id.*)  Graham alleges that "Judge Clifford then ordered [Graham] to sell his home and mandated that he use . . . John O'Hara, whom [Judge Clifford] described as someone he 'knew,' without disclosing their 15-year personal friendship." (*Id.*)  "Judge Clifford informed [Graham] that O'Hara could fund any repairs, sell the home, and be reimbursed at settlement." (*Id.*)  Graham

---

[2]  The Court understands Graham's reference to "Neon" to mean the New Employment Opportunities for Noncustodial Parents Program, which "helps unemployed and under-employed [non-custodial parents] obtain and/or retain employment, specifically through job placement and retention initiatives, to increase the frequency of child support payments."  Governor's Executive Budget 2026-2027, *Pa. Dept. Hum. Srvs.*, at 50-51, https://www.pa.gov/content/dam/copapwp-pagov/en/dhs/documents/docs/publications/documents/budget-information/2026-2027-dhs-blue-book.pdf.

further alleges that "Judge Clifford then increased the arrears owed from $1,500 to $4,472 without explanation." (*Id.*)

Graham met O'Hara the next day for a "walk-through" of Graham's home. (*Id.*) O'Hara told Graham about his friendship with Judge Clifford and "disclosed to [Graham] that Judge Clifford had given him orders to sell homes in the past." (*Id.*) Graham told O'Hara that "amendments to the Judge's orders were requested on August 6, and not to proceed [with the sale] until after the Judge responded." (*Id.*) When O'Hara had not heard from O'Hara after a week, he called and left voicemails for Graham, including one on August 16 in which O'Hara told Graham that "this thing is gonna get real ugly real fast," and that the court was "leaning in on" O'Hara about the sale of Graham's home. (*Id.*) Graham asserts that when he had not responded to O'Hara by August 18, "O'Hara emailed Judge Clifford directly," with Graham copied on the email, and asked how the Judge "would like O'Hara to proceed," after which Judge Clifford scheduled a hearing for September 10, 2024. (*Id.* at 5-6.)

Graham asserts that O'Hara testified at the hearing on September 10 and falsely stated that a then-recent National Association of Realtors "rule" that "eliminat[ed] fixed commissions and require[ed] negotiation" of commission rates "did not apply to [O'Hara's] office." (*Id.* at 6.) Graham alleges that "Judge Clifford dismissed [Graham]'s concerns, did not allow for negotiations of the contract [for the sale of Graham's house], and ordered [Graham]'s immediate incarceration." (*Id.*) Graham was taken into custody by the Montgomery County Sherriff's Department and transported to MCCF. (*Id.*) He alleges that while he was at MCCF, he "was coerced into signing O'Hara's contract under threat of continued detention. No modifications were permitted." (*Id.*) He further alleges that O'Hara "refused to negotiate the seller's fee," and later disclosed that the pre-sale repairs to Graham's home had been financed by a third party "at

3

a 16% interest rate." (*Id.*)  When the sale of the home was concluded on November 21, 2024, Graham's child support arrears of $34,962.09 were paid.  (*Id.*)  Graham states that "[o]n November 25, 2024, Judge Clifford ordered an additional $20,000 withheld from the sale, and scheduled a hearing for December 17 with regard to the addition[al] money withheld, []which [Graham] could not attend; on January 7, 2025, [Judge Clifford] ordered [the $20,000] disbursed to Domestic Relations without [Graham]'s input."  (*Id.*)

Graham asserts claims for violations of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments, as well as various state law claims.  (*See id.* at 6-7.)  He seeks damages and unspecified declaratory and injunctive relief.  (*Id.* at 7.)

## II.    STANDARD OF REVIEW

Because it appears that Graham is incapable of paying the fees to commence this civil action, the Court will grant leave to proceed *in forma pauperis*.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss Graham's Complaint if it fails to state a claim. The Court applies the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), that is, whether a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At the screening stage, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in the Plaintiff's favor, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim."  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *See Iqbal*, 556 U.S. at 678; *see also*

*Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.").

As Graham is proceeding *pro se*, the Court construes the allegations in the Complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* An unrepresented litigant "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.*

The Court must also review the pleadings and dismiss the matter if it determines that the action fails to set forth a proper basis for this Court's subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)).

## III.   DISCUSSION

### A.   Constitutional Claims

Graham asserts constitutional claims under 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### 1.    Montgomery County, MCCF, and Sheriff's Department

Graham asserts claims against Montgomery County, its Sheriff's Department, and MCCF, as well as the Warden of MCCF and the Sheriff in their official capacities.  Local governments and municipalities are considered persons under § 1983.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  However, sheriffs' departments cannot be sued in conjunction with a county because they are merely arms of the county, not separate entities.  *See Kulesa v. Rex*, 519 F. App'x 743, 745 (3d Cir. 2013) (*per curiam*) (finding claims against the Montgomery County Sheriff's Department are treated as claims against Montgomery County itself); *Open Inns, Ltd. v. Chester Cnty. Sheriff Dept.*, 24 F. Supp. 2d 410, 417 (E.D. Pa. 1998) (dismissing claim against sheriff's department because it is only a sub-unit of the county); *Dobson v. Owens*, No. 89-2163, 1989 WL 37140, at *1 (E.D. Pa. Apr. 13, 1989) (holding that Philadelphia Sheriff's Department is not a person for § 1983 purposes); *cf. Bosenberger v. Plymouth Township*, 132 F.3d 20, 25 (3d Cir. 1997) (for purposes of § 1983 claims, municipalities and police departments are treated as single entity).  Similarly, a county correctional facility is not a "person" under Section 1983.  *See Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cnty. Farms Prison*, 426 F. Supp. 271 (E.D. Pa. 1976)); *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010).  Accordingly, any constitutional claims against the Sheriff's Department and MCCF will be dismissed because they are not cognizable under Section 1983.  Graham's claims against the Warden and Sheriff in their official capacities will be dismissed as duplicative of his claims against Montgomery County.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name,

to be treated as a suit against the entity."); *see also Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court correctly dismissed these defendants in their official capacity because the Staneks also sued the District."). The Court will consider Graham's claims for municipal liability against Montgomery County.

To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell*, 436 U.S. at 694; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York,* 564 F.3d 636, 658 (3d Cir. 2009). It is not enough, however, to allege the existence of a policy or custom. "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.*

Graham's alleged injuries all stem from actions taken in his child support proceedings in the Domestic Relations Section of the Montgomery County Court of Common Pleas. He asserts a claim for *Monell* liability on the basis that "[t]he County maintained policies, customs, or practices of enforcing court orders without verifying due process and allowing judges to deny counsel in contempt cases." (Compl. at 7.) However, Montgomery County is not responsible for the events that took place in the proceedings of a Pennsylvania state court. To the contrary, the Montgomery County Court of Common Pleas is part of Pennsylvania's unified judicial system, so it shares in the Commonwealth's Eleventh Amendment immunity. *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005); *see also Custis v. City of Phila. Ct. of Common*

7

*Pleas*, No. 21-3573, 2021 WL 3784257, at *4 (E.D. Pa. Aug. 26, 2021) (concluding that Domestic Unit of the Philadelphia Court of Common Pleas "may not be sued under § 1983" as a division of a state court).  The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages.  *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003).  "[I]ndividual counties cannot be held liable for the actions of state court judges, who are part of the unified state court system."  *Andresen v. Pennsylvania*, No. 20-989, 2020 WL 9048845, at *6 (M.D. Pa. Dec. 16, 2020) (internal quotations and citations omitted), *report and recommendation adopted*, No. 20-989, 2021 WL 1174497 (M.D. Pa. Mar. 29, 2021); *see also Callahan v. City of Philadelphia*, 207 F.3d 668, 672-74 (3d Cir. 2000) (explaining that judges of the Pennsylvania Court of Common Pleas are part of the unified judicial system subject to the control of the Pennsylvania Supreme Court).

"Simply put, one cannot sue a [municipality] in federal court for civil rights violations arising out of the conduct of litigation in the county court of common pleas, since the courts are a state agency, and not part of county government."  *Andresen*, 2020 WL 9048845, at *6; *see also Scheib v. Pennsylvania*, 612 F. App'x 56, 59 (3d Cir. 2015) (*per curiam*) ("It appears that [plaintiff] named the County as a defendant because she mistakenly believes that the Allegheny County Court of Common Pleas is a County entity.  As the District Court correctly noted, however, the court is a Commonwealth—not County—entity. . . .  Therefore, [plaintiff's] claims against the Court of Common Pleas are . . . barred by the Eleventh Amendment."); *cf. Green v. Domestic Rels. Section Ct. of Common Pleas Compliance Unit Montgomery Cnty.*, 649 F. App'x 178, 180 (3d Cir. 2016) (*per curiam*) ("[A]ll claims against the Domestic Relations Section of the Montgomery County Court of Common Pleas were properly dismissed pursuant to its

Eleventh Amendment immunity."). Graham therefore fails to state a claim against Montgomery County. *Cf. Durham v. City & County of Erie*, 171 F. App'x 412, 414 (3d Cir. 2006) (*per curiam*) ("[Plaintiff]'s complaint includes nothing more than a conclusory allegation that Erie has established an official policy or custom to deprive defendants of their right to counsel. He provides only one incident as an example, his own. Moreover, the complaint fails to allege the existence of any actually enacted policy or explain how city custom could influence a judicial determination.").

### 2.    Judge Clifford

Graham asserts claims against Judge Clifford in his individual capacity for purported violations of his constitutional rights. "A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Capogrosso v. The Sup.r Ct. of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009) (quoting *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006)); *see also Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978). An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Sup. Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Capogrosso*, 588 F.3d at 184 (citations omitted). Moreover, "[i]mmunity will not be forfeited because a judge has committed 'grave procedural errors,' or because a judge has conducted a proceeding in an 'informal and ex parte' manner', . . . [or] because the judge's action is 'unfair' or controversial." *Gallas*, 211 F.3d at 769 (citations omitted); *see also Lee v. Gallina Mecca*, No. 22-2871, 2023 WL 5814783, at *4 (3d Cir. Sept. 8, 2023) ("But even accepting Lee's allegations as true, judicial acts that appear to be unfair, malicious, or *ex parte* are not stripped of their judicial immunity."). A judge will be subject to liability only "when he has acted 'in the

9

clear absence of all jurisdiction.'" *Id.* (quoting *Stump*, 435 U.S. at 356-57). "Generally . . . 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.'" *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)).

Graham alleges that Judge Clifford caused his injuries by refusing to appoint him counsel at civil contempt hearings, then incarcerating him when he failed to pay his child support obligations and arrears, and ultimately compelling him to sell his home under unfavorable conditions to satisfy those arrears. (*See generally* Compl. at 5-6.) These are all judicial acts. *See Gittens v. Pavlack*, 838 F. App'x 717, 718 (3d Cir. 2021) (*per curiam*) (concluding that a judge of the domestic relations section of the Court of Common Pleas was immune from suit based on the freezing of bank assets to satisfy child support obligations) (citing, *inter alia*, *Figueroa*, 208 F.3d at 443; and 23 Pa. Cons. Stat. § 4305(b)(10)); *see also* 23 Pa. Cons. Stat. Ann. § 4305(b)(10)(v)-(vi) (empowering the domestic relations section of the Court of Common Pleas to "[i]ssue orders in cases where there is a support arrearage to secure assets to satisfy current support obligation and the arrearage by . . . [i]mposing liens on property . . . [and d]irecting the sheriff to levy and sell other real or personal property"); *id.* at § 4352(d)-(d.1) (describing the imposition and administration of arrearages as judgments and liens against property); Pa. R. C. P. No. 1910.22 ("An overdue support obligation of this or any other state which is on record at the domestic relations section shall constitute a lien of record by operation of law against the obligor's real property located in Pennsylvania."); Pa. R. C. P. No. 1910.25-5 (establishing procedure for incarceration as a civil contempt sanction for failure to pay support); *cf. Davis v. Tarrant County*, 565 F.3d 214, 223 (5th Cir. 2009) ("The appointment of counsel for indigent defendants in criminal cases is a normal judicial function." (citing, *inter alia*, *Lewis v.*

10

*Lehigh County*, 516 F. Supp. 1369, 1370-71 (E.D. Pa. 1981) ("The judges' involvement . . . constitutes solely the exercise of their judicial functions—appointing attorneys to represent indigent defendants.")))·

All of Graham's factual allegations against Judge Clifford thus concern his judicial acts, and no facts support the inference that Judge Clifford acted in the absence of jurisdiction, so Judge Clifford is immune from suit on Graham's claims. *See, e.g., Mikhail v. Kahn*, 991 F. Supp. 2d 596, 660 (E.D. Pa. 2014) (finding judges who presided over protection from abuse, custody, and divorce proceedings were entitled to immunity because acts were taken in judicial capacity and plaintiff did not show an absence of jurisdiction, and immunity applied despite allegations of bad faith and conspiracy), *aff'd*, 572 F. App'x 68 (3d Cir. 2014) (*per curiam*). Accordingly, Graham's claims against Judge Clifford will be dismissed with prejudice. *See Allen v. DeBello*, 861 F.3d 433 (3d Cir. 2017).

### 3.    Sheriff Sean Kilkenny

Graham names Sheriff Sean Kilkenny in his individual capacity. (*See* Compl. at 3-4.) "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode*, 845 F.2d at 1207). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677)). "Although a court can

11

infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga v. New Jersey Dept. of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing, *inter alia*, *Baker v. Monroe Township*, 50 F.3d 1186, 1194 (3d Cir. 1995)).

Graham names Sheriff Kilkenny in his caption and list of parties but does not include any factual allegations about the Sheriff himself in the body of his Complaint. Instead, Graham states that he was arrested after the September 10, 2024 hearing by the "Montgomery County Sheriff's Department," and then refers to "Sheriff" in reference to a Fourth Amendment claim for "unreasonable seizure." (Compl. at 5-6.) This is insufficient to state the personal involvement of Sheriff Kilkenny. Rather, it appears that he names the Sheriff solely on the basis of his position. Liability under § 1983 cannot be predicated on a *respondeat superior* basis. *See Chavarriaga*, 806 F.3d at 227. Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("[A] director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). Graham fails to state a claim to relief against Sheriff Kilkenny because he provides no facts as to the Sheriff's personal involvement in his claims.

### 4. John O'Hara and RE/MAX

Graham also names realtor John O'Hara and "RE/MAX Central, Inc." as Defendants, and asserts that O'Hara is "a state actor who acted in concert with Judge Clifford and the Sheriff's Department," and that RE/MAX "is vicariously liable for the actions of its agent John O'Hara." (Compl. at 4.) Whether a defendant is acting under color of state law—*i.e.*, whether the

defendant is a state actor—depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

"Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). Rather, to support a finding of state action, "the government must be 'responsible for the specific conduct of which the plaintiff complains.'" *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

"A private party 'who corruptly conspire[s]' with a state official will be considered a state actor under § 1983." *Kitko v. Young*, 575 F. App'x 21, 26 (3d Cir. 2014) (*per curiam*) (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175-76 (3d Cir. 2010)). However, "to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co.*, 615 F.3d at 178. "[A] bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Graham alleges that Judge Clifford "mandated that he use" O'Hara to sell his home to

13

satisfy his child support arrears.  (Compl. at 5.)  He asserts that O'Hara told him about a "personal friendship with Judge Clifford of over 15 years," and that "Judge Clifford has given [O'Hara] orders to sell homes in the past."  (*Id.*)  He states that O'Hara left him voicemails indicating that "the court" was "leaning in on" O'Hara about the sale of Graham's home, and that "this is going to happen, and it could happen in logical orderly fashion, or this could go down hard, and [it is] totally up to [Graham]."  (*Id.*)  Graham alleges that O'Hara testified falsely at a September 10, 2024 hearing in front of Judge Clifford about negotiation of his commission.  (*Id.*)  Finally, Graham alleges that he "was coerced into signing O'Hara's contract under threat of continued detention[, n]o modifications were permitted," and "O'Hara refused to negotiate the seller's fee."  (*Id.*)  These allegations are insufficient to allege a conspiracy between O'Hara and Judge Clifford, because Graham does not plausibly allege that O'Hara offered a benefit to Judge Clifford in exchange for a particular ruling.  *See Great W. Mining*, 615 F.3d at 179 (explaining that an allegation that a judge acted corruptly, "without a complementary allegation of conduct by the non-judicial actor, does not plausibly suggest the existence of a conspiracy between the party and the judge to exchange favorable rulings" for some benefit to the judge).

Absent allegations of conspiracy, the Court has considered whether Graham sufficiently pleads that O'Hara was a state actor under "the 'joint action test,' where a private party will be deemed a state actor if it is a 'willful participant in joint action with the State or its agents.'"  *Cahill ex rel. L.C. v. Live Nation*, 512 F. App'x 227, 230 (3d Cir. 2013) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982)).  The Court understands the sequence of Graham's allegations to be that he was facing jail time for civil contempt because he had failed to meet his child-support obligations and, at the August 6, 2024 hearing, Graham himself raised the possibility of selling his home to satisfy his arrears.  (*See* Compl. at 5 (stating that, "in order

14

to avoid jail, [Graham] informed Judge Clifford [that he] was considering selling his home").).) Graham also states that he was "ordered" to sell his home and "mandated" to use O'Hara to do so; that O'Hara communicated directly with the judge and was also a witness at one of Graham's hearings; and that he was then "coerced" into signing the contract to sell his home without negotiation of the terms. (*Id.* at 5-6.) Graham appears to include the payment of O'Hara's commission and the cost of a loan and interest to finance repairs among his injuries. (*Id.* at 6.) Graham does not specify the amount of any financial injury related to O'Hara's fee or the repair loan, but he does state that $34,962.09 in arrears were paid upon the sale of the home, and that "Judge Clifford ordered an additional $20,000 withheld from the sale." (*Id.* at 6.)

Graham does not attribute the payment of arrearages and additional $20,000 withheld from the sale to O'Hara's conduct and, in any event, because those alleged financial "injuries" were caused by orders of the state court, this Court lacks jurisdiction over such claims. *See T. M. v. Univ. of Md. Med. Sys. Corp.*, 608 U.S. ---, --- S.Ct. ----, No. 25-197, slip op. at 1 (U.S. June 18, 2026), 2026 WL 1751823, at *3 ("Under . . . the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments,'" even "when the state-court judgment at issue is subject to further review in state appellate proceedings." (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005); and citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983))). As to O'Hara's fee and the repair loan he arranged, it is not clear from Graham's pleading if those are alleged injuries caused by the state-court judgment because they were part of Judge Clifford's orders, or instead if Graham alleges that they resulted from O'Hara

15

exceeding or abusing whatever privilege or authority had been conferred upon or delegated to him by Judge Clifford.  If the former, then it would appear that the Court also lacks jurisdiction over Graham's claims against O'Hara because his injuries arise from the state-court judgment.  If the latter—that O'Hara abused whatever authority was delegated to him—then O'Hara cannot be deemed a state actor for the purposes of those claims.  *See Mikhail*, 991 F. Supp. at 653 ("[A]n otherwise private actor may become a state actor where he follows—*but not when he abuses*— state-created procedures that either delegate the State's authority to him or allow him to invoke it in such a way that agents of the State automatically (*i.e.*, without exercising judgment) exercise it on his behalf." (emphasis added)).  In either case, Graham fails to state a claim to relief against O'Hara; and because vicarious liability is not applicable to § 1983 suits, he also fails to state a claim to relief against RE/MAX.

### 5.      Due Process

Despite his failure to state a claim against any named Defendant for the reasons discussed above, the Court understands the common foundation of all Graham's claims to be that counsel was not appointed to represent him in his child-support hearings.[3]  The Court notes that Graham specifically alleges that he was not provided with counsel at the hearings on July 23 and August 6, 2024, but he makes no allegation concerning representation by counsel at the September 10, 2024 hearing, after which he was incarcerated.  (*Compare* Compl. at 5, *with id.* at 6.)  Aside from the defects discussed above as to his claims against Montgomery County and

---

[3]  The Court understands Graham's references to his hearings in 2022 only as historical background of an alleged "pattern" of denying counsel.  (*See* Compl. at 4.)  To the extent that Graham intended to assert any claim based on events in 2022, it is untimely, because the timeliness of a § 1983 claim is governed by the limitations period applicable to personal injury actions of the state where the cause of action arose, and the Pennsylvania statute of limitations for a personal injury action is two years.  *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (first citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007); then citing 42 Pa. Cons. Stat. § 5524(2)).

Judge Clifford based on the lack of counsel, his "Fourth Amendment Unreasonable Seizure" claim is based on the assertion that the order to detain him after the September 10 hearing was "unconstitutional," and the "denial of counsel" underpins his due process claim.  (*Id.* at 6-7.)

"[T]here is no automatic federal right to counsel at civil contempt proceedings for an indigent person subject to a child support order, even if that individual faces up to a year of incarceration." *Ibrahim v. Attorney Gen.*, No. 21-1128, 2021 WL 3012660, at *3 (3d Cir. July 16, 2021) (*per curiam*) (citing *Turner v. Rogers*, 564 U.S. 431, 448 (2011)); *cf. Nicole K. by next friend Linda R. v. Stigdon*, 990 F.3d 534, 538 (7th Cir. 2021) ("[A] parent is not automatically entitled to counsel in a civil-contempt proceeding arising out of a child-welfare adjudication, even though the remedies for defiance to a court may include imprisonment until the recalcitrant litigant obeys." (citing *Turner*, 564 U.S. 431)).  The United States Supreme Court has explained that "the Sixth Amendment does not govern civil cases," and "where civil contempt is at issue, the Fourteenth Amendment's Due Process Clause allows a State to provide fewer procedural protections than in a civil case." *Turner*, 564 U.S. at 441-42.  The *Turner* Court emphasized that the threshold issue of a contemnor's indigence—and therefore potential entitlement to counsel— can be separated from and decided earlier than the contemnor's ability to pay support, and also distinguished between cases in which support payments are owed directly to an opposing parent or other custodian and cases in which support payments are owed to the State.  *Id.* at 446-48. The Court expressly "d[id] not address civil contempt proceedings where the underlying support payment is owed to the state, for example, for reimbursement of welfare funds paid to the parent with custody." *Id.* at 449.  As to cases in which support payments are owed to an opposing parent or custodian and a court has made a determination that the noncustodial parent is indigent, the Supreme Court held that "[the Due Process] Clause does not require the provision of counsel

17

where the opposing parent or other custodian (to whom support funds are owed) is not represented by counsel and the State provides alternative procedural safeguards," which it described as "(1) notice to the defendant that his 'ability to pay' is a critical issue in the contempt proceeding; (2) the use of a form (or the equivalent) to elicit relevant financial information; (3) an opportunity at the hearing for the defendant to respond to statements and questions about his financial status . . . ; and (4) an express finding by the court that the defendant has the ability to pay." *Id.* at 447-49.

Graham alleges that he received at least three hearings between July and September concerning his ability to pay his support obligations.  He specifically alleges that he was not provided with counsel for the first two hearings.  He does not indicate whether he had counsel for the September 10 hearing.  He also makes no factual allegations concerning the identity of the opposing party at those hearings and whether that opposing party was represented by counsel.  He does not allege whether the state court determined he was indigent, or that he was deprived of any of the procedural safeguards discussed in *Turner*, all of which the Court notes appear to be codified in Pennsylvania procedure.  *See, e.g.*, Pa. R. Civ. P. 1910.25 *et seq.* Accordingly, he has not provided sufficient facts to support a claim that the lack of appointed counsel denied him due process.  *See Turner*, 564 U.S. at 446-49.  Moreover, Graham does not include any allegations concerning whether he used or attempted to use any procedures to contest Judge Clifford's orders, such as an appeal to the Pennsylvania Superior Court.  *See Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants.").

In sum, even assuming that Graham had named an appropriate Defendant for a due

18

process claim and the injuries he complains of could be traced to an underlying due process violation, he fails to provide sufficient factual detail to state such a claim.  Accordingly, his constitutional claims will be dismissed.  However, in an abundance of caution, the dismissal will be entered without prejudice, and Graham will be provided with leave to file an amended complaint, in the event that he can cure the defects identified above.

### B.       State Law Claims

Graham also asserts claims under state law.  (*See* Compl. at 7.)  Because the Court has dismissed his federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims.  Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required.  This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'"  *Lincoln Benefit Life Co.*, 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)) (internal footnotes omitted).  An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment."  *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).  It is the plaintiff's burden to establish diversity of citizenship.  *See Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co.*,

*Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Graham does not allege the citizenship of the parties. Rather, he states that he is a Pennsylvania resident, and it appears that all the Defendants also reside in Pennsylvania or are Pennsylvania entities. Accordingly, Graham has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue, and they will be dismissed. He may re-plead his claims under state law in an amended complaint that sets out a proper basis for the Court's jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Graham leave to proceed *in forma pauperis* and dismiss his Complaint. All federal claims against MCCF, the Montgomery County Sheriff's Department, and Judge Clifford will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. All other federal claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim to relief. All state law claims are dismissed without prejudice for lack of subject matter jurisdiction. Graham may file an amended complaint.[4] An order follows, with further information about amendment.

**BY THE COURT:**

*/S/ Kai N. Scott*

**KAI N. SCOTT, J.**

---

[4] Graham's Motion to Appoint Counsel (ECF No. 3) will be denied without prejudice to renewal after the Court conducts statutory screening of any amended complaint that Graham might file. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (explaining that the "arguable merit" of a plaintiff's claims is the threshold consideration in appointment of counsel).